UNITED STATES, Appellee,

v.

Specialist Troy D. GROVES,
519–08–6483, United States
Army, Appellant.

ACMR 8901108.

U.S. Army Court of Military Review.

23 April 1990.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Captain Robin K. Neff, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Major Kathryn F. Forrester, JAGC, Major Gary L. Hausken, JAGC, Captain Randy V. Cargill, JAGC (on brief).

Before MYERS, JOHNSON and NEURAUTER, Appellate Military Judges.

## OPINION OF THE COURT

JOHNSON, Judge:

Consistent with his pleas, appellant was convicted by a military judge sitting as a special court-martial of damaging an automobile, wrongfully appropriating the same automobile and a typewriter, and larceny of a tuxedo in violation of Articles 109 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 909 and 921 (1982). The military judge sentenced appellant to a bad-conduct discharge, confinement for seventy-five days, forfeiture of $250.00 pay per month for four months, and reduction to Private El, but recommended that the convening authority suspend the punitive discharge. The convening authority approved the sentence as adjudged.

Appellant asserts on appeal that the staff judge advocate (SJA) erroneously included in his post-trial recommendation prejudicial matters in the nature of uncharged misconduct allegedly committed by the appellant. The uncharged misconduct was the basis of the SJA's recommendation that the bad-conduct discharge be approved rather than suspended as recommended by the military judge.

The record of trial reveals that on the night of 18 October 1988, appellant entered a military police "impound" lot at Fort Huachuca, Arizona. Seeing a 1988 Nissan Sentra, an automobile similar to his own Nissan of the same year and model which was then in a body shop for repair of damage resulting from a recent accident, he decided to take it. He started the car by using the "hot-wiring" technique, damaging the ignition lock and the steering column in the process, drove out of the impound lot, and then went to the barracks where he lived. He removed and discarded the license plates on the vehicle, and replaced them a few days later with plates removed from his car. He had a locksmith make a set of keys for the vehicle. For a period of almost two months he used the car as if it were his own, until it was determined on about 16 December by the military police that it belonged to another soldier who had placed it in the impound lot for safekeeping while he went on temporary duty to Honduras for several months. Appellant admitted when questioned that he had taken the automobile.

In his post-trial recommendation to the convening authority, the SJA cited appellant's probable involvement in other misconduct as reason for rejecting the military judge's recommended suspension of the adjudged bad-conduct discharge. Specifically, the SJA related that on 26 November 1988, some five weeks after appellant took the vehicle from the impound lot, another 1988 Nissan Sentra belonging to a soldier named Hayes had been broken into on Fort Huachuca and had had parts removed, including the front grill, the front hood latch, the hub caps and the left door lock. A battle dress uniform (BDU) bearing Hayes' name tag had been removed from the trunk. Lack of investigative leads resulted in the investigation being closed without any charges being made against anyone. The SJA noted that it was discovered later that an upper brake light had also been removed from the vandalized vehicle. He then observed that the accident damage to appellant's own Sentra included the front hood and grill. Moreover, the impound lot Sentra taken by appellant had at some time suffered damage to the upper brake light, a matter which appellant later repaired "using parts identical to those stolen" from the vandalized Hayes vehicle. Finally, the SJA noted that when the impound lot Sentra was restored to the owner, a set of BDU's bearing the name tag "Hayes" was found in the trunk. The SJA concluded that "[t]hese facts gave rise to probable cause to believe that the accused was the person" who stole the parts from the Hayes vehicle.

Appellant asserts that his alleged connection with the stolen parts incident was far too speculative and that, therefore, the SJA abused his discretion by including this uncharged misconduct. We disagree.

■ The SJA may include in his post-trial recommendation "matters outside the record" which he deems appropriate for consideration by the convening authority. Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 1106(d)(5). The SJA must not present information which he knows to be unreliable or misleading. *United States v. Mann*, 22 M.J. 279, 280 n. 2 (C.M.A.1986). The accused must ordinarily be given the opportunity to rebut adverse matters presented to the convening authority. *Id.;* R.C.M. 1107(b)(3)(B)(iii).

■ Here, the appellant was given the opportunity to respond to the SJA's recommendation, including the adverse information, and in fact did so. We find that the information provided in the post-trial recommendation was neither unreliable nor misleading. The SJA relied upon the similarity between the vandalized vehicle, the automobile appellant removed from the impound lot and appellant's vehicle, all of which were of the same year, make and

model; on the fact that appellant replaced a light on the impound lot car that was identical to one removed from Hayes' vehicle; and that a set of BDU's bearing the name of Hayes' was found in the impound lot Sentra when it was recovered from appellant. These facts remain essentially undisputed. The orderly time sequence of events beginning with the accident damage to appellant's Sentra in September, his taking of the impound lot car in October, and the vandalizing of Hayes' vehicle in November lend additional plausibility to the conclusion of the SJA that the appellant was involved in the theft of the parts.

There has been no suggestion that the information presented by the SJA was done in anything but good faith and with no intent to mislead the convening authority. He characterized this information at the outset as an "allegation of additional misconduct" by appellant; then recited the facts that led him to conclude that probable cause existed to believe that appellant was the perpetrator. The SJA also explained that the government elected not to make this incident the subject of additional charges in order to avoid further delay of appellant's trial. The convening authority had before him appellant's request for clemency which specifically addressed the uncharged misconduct information in the SJA's recommendation. The convening authority was well aware of the military judge's recommendation to suspend the bad-conduct discharge, but he decided nevertheless to approve the discharge which was not inconsistent with the terms of appellant's pretrial agreement.

 Accordingly, we find that there was no error by the SJA and that the assignment of error is without merit. Even if it was error on the part of the SJA, in view of the seriousness of the Article 121, UCMJ, offenses, together with appellant's flagrant and unrepentant appropriation of another's automobile for his own use over a two month period until he was caught, there was no prejudice to the appellant in presenting the alleged additional misconduct for the purpose of persuading the convening authority not to adopt the military judge's recommendation to suspend the punitive discharge. The bad-conduct discharge is not inappropriate punishment for the offenses involved, notwithstanding appellant's apparent good performance while on duty.

The findings of guilty and the sentence are approved.

Senior Judge MYERS and Judge NEURAUTER concur.